IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROSS DRESS FOR LESS, INC.,** | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | 4:20-cv-00978 |
| **ML DEVELOPMENT LP,** | § § | |
| Defendant. | § § § | |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Ross Dress for Less, Inc. ("**Ross**" or "**Plaintiff**"), files this Amended Complaint[1] against Defendant ML Development LP ("**ML**" or "**Defendant**"), and respectfully states as follows:

### I.     INTRODUCTION

1.  Ross and ML entered into a real estate contract in August 2018 providing Ross the right to purchase approximately 250 acres of land in Waller County, Texas from ML. Under the contracts, ML agreed to pay (a) all roll back taxes owed to Waller County on the property; and (b) its pro-rated share of 2019 real estate taxes owed on the property prior to the transaction closing on May 17, 2019.

2.  After receiving nearly $33 million at closing, however, ML has subsequently refused to pay its share of the taxes owed—forcing Ross to pay such taxes, even though they are for time periods when ML (and not Ross) actually owned the property. Accordingly, Ross now brings this action to remedy ML's repeated failures to fulfill its significant tax payment obligations (of more than $546,000.00) under the governing contracts.

---

[1] Ross filed its Original Complaint on March 17, 2020 [ECF No. 1].

3. Ross also seeks a judgment declaring that a Drainage Easement required by the Drainage District, worth only nominal consideration, and granted from ML to Ross several months after closing does not in any way affect or eliminate ML's significant tax obligations under the governing contracts.

## II. PARTIES

4. Ross is a corporation organized and existing under the laws of the State of Virginia, having its principal place of business at 5130 Hacienda Drive, Dublin, California 94568.

5. ML is a Texas limited partnership with its principal place of business in Houston, Texas. ML has also appeared in this lawsuit through its attorney, Andrew P. McCormick. ECF No. 7. A true and correct copy of this Amended Complaint will be served upon ML's attorney of record.

## III. JURISDICTION AND VENUE

6. The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

7. The Court has personal jurisdiction over Defendant because: (a) Defendant is an entity registered to do business in the State of Texas; (b) Defendant, on information and belief, regularly does business in the State of Texas; and (c) a substantial part of the acts or omissions giving rise to this lawsuit occurred in the State of Texas.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in this district and a substantial part of the acts or omissions giving rise to this lawsuit occurred in this district.

## IV.    FACTUAL BACKGROUND

A.    <u>ML Sells Land to Ross for Nearly $33 Million</u>

9.    On August 17, 2018, ML and an affiliate of Ross (P150, LLC) entered into a written Agreement of Purchase and Sale of Real Property (the "**PSA**"), under which P150, LLC had the right to purchase approximately 250 acres of land located on the southeast corner of Kingsland Blvd. and Woods Road in Waller County, Texas (the "**Property**") from ML.

10.    ML and P150, LLC subsequently amended certain terms in the PSA on October 29, 2018, December 7, 2018, and again on May 8, 2019.

11.    On May 10, 2019, P150, LLC agreed to transfer and assign to Ross all of its interests and obligations as Purchaser under the PSA, and as permitted by the PSA.  *See* PSA § 14.8 (providing that Purchaser may assign its rights under the PSA without the Seller's consent).

12.    On May 17, 2019, ML and Ross closed on the transaction contemplated in the PSA for a final purchase price of $32,899,897.20, and Ross became the owner of record for the Property with the Waller County Road Improvement District #1 ("**Waller County**").

B.    <u>ML Agrees to Pay All Roll Back Taxes and its Pro-Rated Share of Real Estate Taxes</u>

13.    Section 6.6 in the PSA, titled "Prorations," provides that:  "Real property taxes and the current installment of any special assessments approved by Purchaser in accordance with the provisions of Section 7.1 shall be prorated through Escrow to the Closing.  All Roll Back Taxes shall be paid by Seller."

14.    In other words, ML and Ross agreed in the PSA that (a) ML would pay all roll back taxes owed to Waller County up to and including the May 17, 2019 closing date; and

(b) ML would pay its pro-rated share of 2019 real property taxes to account for its ownership of the Property from January 1, 2019 through May 17, 2019.

15.  ML and Ross also executed a Tax Proration Agreement on May 17, 2019 confirming that: "[a]d valorem real property taxes for the current year [2019] have been prorated between the parties."  *See* May 17, 2019 Tax Proration Agreement and Disclosures at ¶ 1 (the "**Tax Proration Agreement**"), attached hereto as Exhibit A.  Under the Tax Proration Agreement, ML and Ross instructed the title company to use $2,721.33 for proration of estimated 2019 real estate taxes and agreed that, in the event actual taxes were later determined to be more or less than this estimate, they would adjust any differences between and among themselves.  *See id.* at ¶¶ 7 and 8.

16.  In accordance with the Tax Proration Agreement and as reflected in the May 17, 2019 Settlement Statement provided by the title company (attached hereto as Exhibit B), ML contributed $1,021.43 for estimated 2019 real property taxes to account for the 137 days it owned the Property in 2019, and Ross contributed the remaining $1,699.90.

17.  The May 17, 2019 Settlement Statement further explains that the $2,721.33 amount was merely an estimate and adjustments may be needed in the future between ML and Ross: "Purchaser/Seller understands that tax and insurance proration and reserves were based on figures for the preceding year or supplied by others or estimates for the current year, and in the event of any change for the current year, all necessary adjustments must be made between Purchaser and Seller direct."  *See* Exhibit B at 3.

C.   The Drainage District Later Requires that Ross Obtain a Drainage Easement

18.  H&M Company, Inc. ("**H&M**") engaged the civil engineering firm of Ward, Getz and Associates ("**WGA**") located in Houston, Texas to assist H&M with planning and

completing various construction projects on the Property, including the construction of drainage ditches, channels, and related structures. Ross had previously engaged H&M to perform design contractor work for various construction projects on the Property. WGA began working on drainage studies on the Property in or around December 2018. These various drainage improvement projects were primarily intended to benefit Waller County, as Ross was required to later convey title to Waller County of the land on which the drainage improvement projects would be completed.

19. In order to complete these drainage improvement projects, Ross first needed to obtain permits from Waller County. However, before Waller County could issue the permits, Ross and Waller County were required to obtain approval of drainage studies and related plans regarding the Property from the Brookshire-Katy Drainage District ("**BKDD**"). In or around July 2019, after BKDD rejected WGA's drainage studies on the Property, WGA discovered that Ross would not be able to obtain the required approval from BKDD unless Ross obtained an easement from ML or one of ML's affiliates.

20. Due to an inadvertent error, part of the Property acquired by Ross from ML was landlocked. Accordingly, an easement was needed across a small section of ML's property that ran across the Property to (a) connect part of the Property to a drainage channel and (b) ensure that Waller County could later access this portion of ML's property as needed.

21. Beginning in or around 2011, WGA and Ryan Getz (WGA's Managing Partner) have successfully worked with ML and its representatives on various real estate and development projects. Accordingly, Mr. Getz called Mike Magness (ML's General Partner) in early August 2019 to notify Mr. Magness of the permit approval issue and request that ML grant the required easement. Mr. Getz also informed Mr. Magness that, even if ML did not grant the

required easement, Waller County would likely still be able to acquire the property and/or an easement through condemnation proceedings.

22. In addition, ML was already required under a separate agreement with Waller County to convey easements for Waller County projects on the Property without additional compensation.

23. Mr. Magness responded by email on August 8, 2019 attaching a document drafted by ML or its representatives titled "Drainage Easement" and stated as follows: "I am doing this as, a ONE TIME personal favor to you, not to the Grantee, not to the District, we are now even. Don't ask for anything else. Get this back to me immediately, as I have to get some things done with Louis and his brother once this is signed."

24. No ML representative (including Mr. Magness) ever discussed or informed WGA, Mr. Getz, H&M, or Ross that the Drainage Easement document was intended to affect or relate in any way to ML's tax payment obligations under the PSA and/or Tax Proration Agreement.

25. On or around August 12, 2019, Ross and ML executed the Drainage Easement document attached hereto as <u>Exhibit C</u>. The Drainage Easement provides (among other things) that, in exchange for $10, ML will grant Ross an easement across a 2,771 square-foot section of ML's property for the construction, reconstruction, maintenance, and operation of a drainage ditch and drainage structures.

26. Paragraph 9 in the Drainage Easement states as follows:

> Notwithstanding anything to the contrary, the conveyance of this easement fulfills any and all contractual, moral, or ethical obligations that ML DEV LP may have had in the past or may have in the future to P150, LLC, a Delaware limited liability company and/or its successor Ross Dress for Less, Inc. a Virginia corporation, ML DEV LP shall have no obligation to provide any easements, right-of-way or anything else of value to the Grantee.

27. There is no language in the Drainage Easement referencing the PSA, Tax Proration Agreement, or Ross' or ML's respective rights or obligations under those prior agreements. ML never informed WGA, Ross, or Waller County (whether verbally or in writing) prior to execution of the Drainage Easement that ML intended for the language in paragraph 9 to in any way affect ML's tax payment obligations under the PSA and Tax Proration Agreement. Ross, therefore, understood and fully intended for the Drainage Easement to only apply to ML's past and future obligations with respect to easements.

28. Prior to Ross' counsel receiving a letter from counsel for ML on April 16, 2020, ML never informed WGA, Ross, or Waller County that it interpreted paragraph 9 in the Drainage Easement to relate in any way to ML's tax payment obligations under the PSA and Tax Proration Agreement.

D.  ML Refuses to Pay Roll Back Taxes or its Share of Real Estate Taxes Owed

29. Despite its obligation under the PSA to pay "all roll back taxes," ML has refused or otherwise failed to make any tax payments on the Property owed to Waller County after the May 17, 2019 closing date.

30. On October 8, 2019, Ross received a "Delinquent Statement" Invoice from Waller County requesting the payment of "AG ROLLBACK" taxes on the Property from 2014-2018 totaling approximately $250,339.56. *See* Delinquent Statement, attached hereto as Exhibit D.

31. On October 16, 2019, Ross emailed Mr. Magness, ML's General Partner, the October 8, 2019 "Delinquent Statement" Invoice and requested confirmation from Mr. Magness once ML completed payment of the roll back taxes owed. *See* Email Chain, attached hereto as Exhibit E. However, no representative of ML, including Mr. Magness, responded to Ross' October 16, 2019 email.

32. On January 22, 2020, Ross sent a follow-up email to Mr. Magness checking to see if ML paid the roll back taxes it owed to Waller County under the PSA. *See* Exhibit E. However, no representative of ML, including Mr. Magness, responded to Ross' January 22, 2020 follow-up email.

33. On February 6, 2020, Ross sent a letter to ML attaching Waller County's 2019 Tax Statement Invoices on the Property and requested that ML pay to Ross $279,055.86—which represents ML's pro-rated share of the 2019 real estate taxes on the Property for the time period January 1, 2019 to May 17, 2019. *See* Letter dated February 6, 2020, attached hereto as Exhibit F. Ross paid the entire 2019 real estate taxes owed to Waller County on the Property on or around January 24, 2020. However, no representative of ML, including Mr. Magness, responded to Ross' February 6, 2020 letter.

34. On February 8, 2020, Ross sent another follow-up email to Mr. Magness to notify him that if the roll back taxes had not yet been paid by ML, Ross would proceed with collection efforts. *See* Exhibit E. However, no representative of ML, including Mr. Magness, responded to Ross' February 8, 2020 follow-up email.

35. On February 12, 2020, Ross received another "Delinquent Statement" Invoice from Waller County requesting approximately $267,863.34 for "AG ROLLBACK" taxes owed on the Property from 2014-2018, plus penalties and interest. *See* Delinquent Statement, attached hereto as Exhibit G.

36. In a final effort to resolve this dispute, counsel for Ross sent a letter to ML on February 18, 2020 requesting that ML pay Ross, by no later than February 28, 2020, the roll back taxes and pro-rated 2019 real estate taxes owed by ML. *See* Demand Letter, attached hereto as Exhibit H.

37. On February 19, 2020, Mr. Magness finally responded by claiming that ML has fulfilled its obligations to Ross under the PSA and further accused Ross of "harassment and intimidation tactics" for simply requesting that ML fulfill its tax payment obligations under the PSA and the Tax Proration Agreement. *See* Magness Email, attached hereto as Exhibit I.

38. Accordingly, Ross was forced to pay the roll back taxes on the Property on or around February 17, 2020 that were owed to Waller County and subsequently file this lawsuit in order recover its substantial damages suffered due to ML's breach of its tax payment obligations.

## V.     CAUSES OF ACTION

### COUNT ONE – Breach of Contract

39. Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

40. ML entered into the PSA and the Tax Proration Agreement with Ross and/or its affiliate. The PSA and the Tax Proration Agreement are valid, binding, and enforceable agreements. Ross has performed all of its obligations, if any, under the PSA and the Tax Proration Agreement and all conditions precedent to Ross' performance under the PSA and the Tax Proration Agreement have occurred.

41. Under the PSA and the Tax Proration Agreement, ML agreed to pay all roll back taxes on the Property and its pro-rated share of 2019 real estate taxes on the Property for the time period January 1, 2019 to May 17, 2019.

42. Despite receiving numerous requests from Ross and/or Waller County, ML has repeatedly refused or otherwise failed to pay the roll back taxes and/or 2019 real estate property taxes it owes to Waller County.

43. As a direct and proximate result of ML's breaches of the PSA and the Tax Proration Agreement, Ross has suffered monetary damages in excess of $546,000.

## COUNT TWO – Unjust Enrichment

44. Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

45. Under Texas law, "[u]njust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain . . . A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *First Am. Title Ins. Co. v. Brett C. Moody Invs., LLC,* No. H-14-0473, 2015 WL 1220733, at *3 (S.D. Tex. Mar. 15, 2015).

46. In the alternative, even if no express contract existed between ML and Ross requiring ML to pay all roll back taxes and its pro-rated share of 2019 real estate taxes on the Property, or if paragraph 9 of the Drainage Easement is construed so as to excuse these tax payment obligations, ML was unjustly enriched by Ross paying these taxes owed to Waller County for time periods prior to when Ross owned the Property and which ML otherwise would have been required to pay.

47. Ross paying the roll back taxes on the Property for 2014 through 2018 and real estate taxes on the Property for the time period January 1, 2019 through May 17, 2019—time periods when ML, and not Ross, owned the Property—conferred a benefit upon ML.

48. ML had full knowledge of the tax invoices from Waller County and Ross' payment of such invoices on the Property through the numerous correspondence that Ross sent to ML providing notice of such tax invoices and payments.

49. If ML is allowed to retain the benefit of the tax payments made to Waller County by Ross for time periods when ML—and not Ross—owned the Property without reimbursing

Ross for such payments, ML will be unjustly enriched in an amount exceeding $546,000. ML should not be allowed to retain this undue advantage.

## COUNT THREE – Declaratory Judgment

50. Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

51. The facts described above present a case of actual controversy within this Court's jurisdiction. Specifically, a real and substantial controversy exists between the parties regarding (a) ML's tax payment obligations under the PSA and the Tax Proration Agreement; and (b) the scope and effect of paragraph 9 in the Drainage Easement.

52. The plain language in the Drainage Easement does not reference ML's tax payment obligations under the PSA and the Tax Proration Agreement. Therefore, the parties did not intend for the Drainage Easement to in any way affect or eliminate ML's tax payment obligations. The facts and circumstances surrounding the negotiation and execution of the Drainage Easement described above further support this interpretation.

53. In the alternative, paragraph 9 in the Drainage Easement is ambiguous and, based on the facts and circumstances relating to the negotiation and execution of the document, the proper interpretation of such language is that it does not eliminate ML's tax payment obligations. In negotiating and executing the Drainage Easement, Ross never intended for the language in paragraph 9 to eliminate or reduce ML's tax payment obligations.

54. In the alternative, paragraph 9 of the Drainage Easement should be reformed or rescinded under the doctrines of mutual and/or unilateral mistake. Ross never intended for the language in paragraph 9 to eliminate or reduce ML's significant tax payment obligations (of more than $546,000) in exchange for a limited drainage easement with only nominal market value.

55. Moreover, at the time ML executed the Drainage Easement it either (a) did not intend for the language in paragraph 9 to apply to its tax payment obligations (and only recently invented this theory), making the doctrine of mutual mistake apply; or (b) was aware of Ross' unilateral mistake and still executed the Drainage Easement without correcting Ross' mistake and/or understanding.

56. Ross' mistake occurred despite it exercising ordinary care in negotiating, reviewing, and executing the Drainage Easement. Furthermore, reforming or rescinding paragraph 9 would appropriately place the parties in the position they were in prior to executing the Drainage Easement—when ML's tax payment obligations were clear under the PSA and the Tax Proration Agreement.

57. Accordingly, pursuant to the Federal Declaratory Judgment Act and Rule 57, Plaintiff requests that the Court declare the rights, status, and other legal relations between the parties. Specifically, Plaintiff requests that the Court declare that (a) ML agreed to pay all roll back taxes owed to Waller County on the Property; (b) ML agreed to pay its pro-rated share of 2019 real estate taxes on the Property prior to the transaction closing on May 17, 2019; and (c) the Drainage Easement does not in any way affect or reduce ML's tax payment obligations under the PSA and the Tax Proration Agreement. *See* 28 U.S.C. § 2201, et seq.; FED. R. CIV. P. 57.

## VI. ATTORNEYS' FEES

58. Plaintiff incorporates by reference all of the allegations set forth above as if fully set forth herein.

59. Due to ML's breaches, Ross has retained the services of Weil, Gotshal, & Manges LLP ("**Weil**") and has agreed to pay Weil a reasonable fee for its services necessarily rendered and to be rendered in this lawsuit.

60. Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and Section 14.4 in the PSA, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees incurred in the prosecution of this action.

## VII.   JURY DEMAND

61. Plaintiff requests a trial by jury.

## VIII.   PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against the Defendant for the following:

(a) All damages caused by Defendant's breaches of the PSA and/or the Tax Proration Agreement;

(b) All damages caused by Defendant's failure to pay the roll back taxes on the Property from 2014-2018 owed to Waller County and/or the 2019 real estate taxes on the Property owed to Waller County from January 1, 2019 to May 17, 2019;

(c) Declaring that: (i) ML agreed to pay all roll back taxes owed to Waller County on the Property; (ii) ML agreed to pay its pro-rated share of 2019 real estate taxes on the Property prior to the transaction closing on May 17, 2019; and (iii) the Drainage Easement does not in any way affect or reduce ML's tax payment obligations under the PSA and the Tax Proration Agreement;

(d) All pre-judgment and post-judgment interest, as allowed by law;

(e) All reasonable and necessary attorneys' fees and expenses incurred in this matter; and

(f) Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Dated: _____, 2020

          Respectfully submitted,

          */s/*
          Paul R. Genender
            paul.genender@weil.com
            Texas State Bar No. 00790758
            Texas Southern District Bar No. 24576
          Nathan White
            nathan.white@weil.com
            State Bar No. 24084084

          WEIL, GOTSHAL & MANGES LLP
          200 Crescent Court, Suite 300
          Dallas, Texas  75201-7830
          Telephone:  (214) 746-7700
          Facsimile:  (214) 746-7777

          ***ATTORNEYS FOR PLAINTIFF***
          ***ROSS DRESS FOR LESS, INC.***

## CERTIFICATE OF SERVICE

    I hereby certify that on this the \_\_\_\_ day of \_\_\_\_\_ 2020, a true and correct copy of the foregoing document was served upon Defendant's counsel through the Court's ECF system, as follows:

    Andrew P. McCormick
    4950 Bissonnet St., Suite A
    Bellaire, Texas 77401
    andy@mmtxtrial.com

          */s/*
          Paul R. Genender