# Exhibit 1

## AGREEMENT OF PURCHASE AND SALE
## OF REAL PROPERTY

### 1. SALIENT TERMS

1.1. Effective Date:           August __17__, 2018

1.2. Parties:                  Purchaser:
P150, LLC
c/o Brian McLaughlin
4077 White Alder
Sonoma, CA 95476
Phone: 707-226-9793
mclaughlinlaw@prodigy.net

Seller:
ML DEV LP
2310 Baker Road
Houston, TX 77094
Attention: Mike Magness
Phone: (281) 802-9414
email: mbmagness@aol.com

1.3. General Location:     Approximately 250 acres located on the SE corner of future Kingsland Blvd. and Woods Road in the County of Waller, Texas.

1.4. Purchase Price:       Three and 5/100 Dollars ($3.05) per square foot of area within the Developable Property; and Two and 85/100 Dollars ($2.85) per square foot for the Detention Area.

1.5. Contingency Period:   From the Effective Date through December 10, 2018.

1.6. Initial Deposit:       Five Hundred Thousand Dollars ($500,000)

1.7. Independent Consideration:   One Hundred Dollars ($100)

1

| 1.8. | Title Company: | Charter Title Company |
|------|----------------|-----------------------|
| | | 609 Main Street, Ste. 4325 |
| | | Houston, TX 77002 |
| | | Attn: Garry Carr |
| | | (713) 222-6060 |
| | | gcarr@chartertitle.com |

| 1.9 | Closing Date: | On or before December 20, 2018. |
|-----|---------------|----------------------------------|

## 2. PARTIES AND EFFECTIVE DATE

This Agreement is made as of the "Effective Date." The "Effective Date" shall be the business day after Purchaser's receipt of a fully executed original of this Agreement.

## 3. PROPERTY

Subject to all of the terms, conditions and provisions of this Agreement, Seller hereby agrees to sell, and Purchaser hereby agrees to buy, all that certain real property shown on Exhibit "A" and on Exhibit "E" attached hereto (the "Property") together with all easements, hereditaments and appurtenances thereto. The Property is being sold in its "AS IS, WHERE IS" condition, subject any pre-closing and post-closing obligations of Seller.

Attached hereto as Exhibit "A" is a plan of the Developable Property showing the intersection of Kingsland Boulevard and Woods Road, with Kingsland Boulevard realigned, but subject to governmental approval. Seller has approved such realignment, and Purchaser understands that such realignment is subject to governmental approval. Purchaser shall survey the Developable Property and provide Seller with a proposed legal description thereof thereof.

## 4. PURCHASE PRICE

The Detention Area is the Property required by Waller County Road Improvement District to drain the Property. The location of the Detention Area shall be determined by the Seller, and the size of the Detention area shall be determined by the Waller County Road Improvement District No. 1 and the Brookshire Katy Drainage District. The location and size of the Detention Area, once determined, shall be attached to this Agreement as Exhibit "E". The remainder of the Property is the "Developable Property" as shown as Exhibit "A" attached hereto. The total Purchase Price shall include the price of the Developable Property plus the price of the Detention Area. In the event the Closing Date occurs after May 30, 2019, the Purchase Price for the total Property shall be increased to Three and 20/100 Dollars ($3.20) per square foot.

5.  **DEPOSIT AND ADDITIONAL CONSIDERATION**

5.1.  Deposit.

Purchaser shall deposit with the Title Company the Initial Deposit which shall be applicable to the Purchase Price.

If this Agreement has not been terminated by Purchaser on or before December 10, 2018, then Purchaser shall have the option to extend the Closing Date for as many as six (6) additional periods of thirty (30) days each, plus one (1) final additional period of twenty (20) days (the "Extension Periods"). Such options may be exercised by written notice to Seller on or before the last day of the then current Closing Date. Simultaneously within the exercise of each option, Purchaser shall deposit with Seller and release to Seller an additional Seventy-Five Thousand Dollars ($75,000) referred to as an "Additional Deposit". Each Additional Deposit shall be applicable to the Purchase Price.

If this Agreement has not been terminated by Purchaser on or before December 10, 2018, then the Initial Deposit and each Additional Deposit shall be non-refundable and released to the Seller, except in the event of default by Seller.

5.2.  Independent Consideration.

In addition to the Initial Deposit and independent of any other consideration provided for hereunder, Purchaser shall deliver to Seller the Independent Consideration which is fully earned by Seller and is not refundable.

6.  **TITLE**

6.1  Commitment.

Within five (5) business days after the Effective Date, the Title Company will deliver to Purchaser a commitment for Title Insurance (the "Commitment") covering the Property, together with legible copies of all items referred to therein ("the Title Documents").

6.2  Delayed Closing Date.

If this transaction shall fail to close on the Closing Date because of the failure of Purchaser to comply with its obligations hereunder, the costs incurred shall be paid by Purchaser. If this transaction shall fail to close because of failure of Seller to comply with its obligations hereunder, such costs, without limitation of Purchaser's remedies, shall be paid by Seller. The term "Closing" or "Close of Escrow" means the

completion of this transaction by recordation of the Special Warranty Deed and disbursement of funds by the Title Company.

6.3   Costs and Expenses.

Subject to Section 6.2 above, the expenses of the Title shall be paid as follows: Purchaser shall pay the premium for title insurance required by Purchaser, the cost of the Survey (defined in Section 8.1), the fee for recording the Special Warranty Deed and any other closing documents, and fifty percent (50%) of all Title costs.  Purchaser shall pay the cost of any amendment or endorsement to the Owners Policy of Title Insurance desired by Purchaser. Seller shall pay fifty percent (50%) of all Title costs. All other costs not specifically addressed above shall be paid in accordance with the custom of Waller County, Texas.

6.4   Documents to be Delivered by Seller.

At least two (2) business days before the Closing, Seller shall deposit into Escrow, for delivery to Purchaser at the Close of Escrow, the following documents:

a) The Special Warranty Deed fully executed by Seller, in recordable form, sufficient to convey marketable and insurable fee simple title as previously approved by Purchaser, in the form attached hereto as Exhibit "B."

b)  The non-foreign affidavit described in Section 8.4(g).

c)  Such affidavits, indemnities, and other documents as the Title Company may require as a condition to issuing the Title Policy.

d)  Such other documents as Seller may have agreed to deliver at the Closing.

6.5   Purchaser Delivery.

At least two (2) business days before the Closing, Purchaser shall deposit into Escrow the following:

a)   The balance of the Purchase Price as described in Article 4 hereof (Purchaser being credited with all funds deposited with Seller and/or the Escrow Holder, other than the Independent Consideration), together with such other sums necessary to comply with Purchaser's obligations hereunder.

b)   A counterpart of the General Assignment, executed by Purchaser.

c)   Such other documents as Purchaser may have agreed to deliver.

4

6.6    <u>Prorations</u>.

Real property taxes and the current installment of any special assessments approved by Purchaser in accordance with the provisions of Section 7.1 shall be prorated through Escrow to the Closing.  All Roll Back Taxes shall be paid by Seller.

## 7.    TITLE CONDITION OF THE PROPERTY

7.1    <u>Preliminary Report.</u>

a)    Purchaser shall cause the title insurer (the "Title Underwriter") to furnish to Purchaser a title commitment showing title to the Property (the "Preliminary Report") and specifying all exceptions to title, accompanied by complete and legible copies of all instruments referred to therein. Purchaser shall have the right to object to any exceptions contained in the Preliminary Report until seventy-five (75) days after Purchase's receipt of all of the following:  (A) the Preliminary Report, (B) complete and legible copies of all the items listed in the preceding sentence, and (C) the final version of the Survey specified in Section 8.1 (the "Review Period"). The title exceptions to which Purchaser objects are hereinafter referred to as the "Disapproved Exceptions."  If Purchaser fails to make any title objections within the Review Period, the Preliminary Report shall be deemed approved.  Those title exceptions, title deficiencies and conditions that are shown on the Survey and expressly accepted by Purchaser pursuant to the terms of this Section 7.1 shall constitute the "Permitted Encumbrances"; provided, however, that the term Permitted Encumbrances shall not include any liens or any other title defects which Seller is obligated to cure under the terms of this Agreement, or agrees to cure on or before the Closing.

b)    Notwithstanding anything to the contrary, Buyer has until 12/10/18 to satisfy himself as to the condition of the Property including title.  Within two (2) business days after receipt of notice of Purchaser's Disapproved Exceptions, Seller shall, as to Disapproved Exceptions (other than recorded liens), notify Purchaser in writing whether Seller will remove such items or not.  If Seller elects to remove Disapproved Exceptions, Seller shall have until the earlier of: (i) the date that is thirty (30) days from the date Seller receives Purchaser's notice of Disapproved Exceptions, or (ii) the Closing Date (the "Title Cure Date") to clear all Disapproved Exceptions. Seller must cause the expungement from title (by paying in full at or before Closing) of all recorded liens expressed as a liquidated sum of money, such as, by way of example, deeds of trust.  In the event Seller does not remove from title any Disapproved Exception by the Title Cure Date, Purchaser shall have the right to elect one of the following alternatives:

i) waive such Disapproved Exceptions and close the Escrow, or

ii) terminate this Agreement.

Notwithstanding anything to the contrary, Buyer has until 12/10/18 to satisfy himself as to the condition of the Property including title.

c)  In the event of Purchaser's termination under subsection (b)(ii) above, the parties shall have no further obligation hereunder (other than with respect to obligations hereunder that expressly survive the termination of this Agreement), and all monies deposited with Seller shall be returned to Purchaser, other than the Independent Consideration. Notwithstanding anything to the contrary, Buyer has until 12/10/18 to satisfy himself as to the condition of the Property including title.

7.2   Title Insurance.

At the Close of Escrow and as a condition thereto, the Title Underwriter shall issue to Purchaser a TLTA Owners Policy of Title Insurance (the "Title Policy")  showing title to the Property vested in Purchaser, subject only to the Permitted Encumbrances and to the non-delinquent real property taxes and special assessments.

## 8.  CONDITIONS TO PURCHASER'S OBLIGATION

8.1   Diligence Conditions.

Purchaser shall have until the expiration of the Contingency Period to examine the Property, to review all documents and other information, and to conduct such economic, governmental, developmental, feasibility and physical studies and analyses as Purchaser may require, in Purchaser's sole and absolute discretion.  Within thirty (30) days after the Effective Date, Buyer shall retain Ward, Getz to perform a drainage study with respect to the Property.

Purchaser shall order an ALTA/ACSM Land Title Survey showing the boundaries thereof, the location of the any improvements thereon, the location of all recorded easements which affect the Property, and such other information and in such form as required by Purchaser and the Title Underwriter (the "Survey"). The Survey shall be certified to Seller, Purchaser and the Title Company and contain a calculation of the Developable Area and Detention Area.  Seller shall have ten (10) calendar days from receipt to approve the legal description of the Real Property contained in the Survey.

8.2   Seller's Obligation.

a)  From and after the Effective Date, Seller shall provide access to the Property by Purchaser, its agents or representatives to inspect the physical condition of every

6

portion thereof, including, without limitation, the right to make surveys, and soils and well borings and reports, engineering, geological, archaeological tests and investigative tests, investigations and tests for Hazardous Materials and asbestos, review and inspections for endangered species, review and inspection for the availability, capacity and costs of utilities, review and inspection for feasibility of construction (collectively, "Investigations").  All Investigations shall be at the expense of Purchaser.  The Property to be returned to its original condition in the event Purchaser does not purchase the Property.

b)  Within five (5) business days after the Effective Date, Seller shall provide:

    i)   A Phase One Environmental Review performed by DCH Environmental.

    ii)  Copies of the most recent real estate tax bills relating to the Property.

    iii) Any other information pertaining to the Property reasonably requested by Purchaser which is in Seller's possession.

The conditions of Sections 8.1 and 8.2 are for the benefit of Purchaser, any or all of which may be waived by Purchaser in writing, at Purchaser's sole option.

8.3  <u>Notice.</u>

If, prior to expiration of the Contingency Period, Purchaser does not notify Seller that Purchaser has approved the above items, Purchaser may cancel the Contract and receive a refund of all Deposits paid to-date.

8.4  <u>Closing Conditions.</u>

It shall be a further condition precedent to Purchaser's obligation to consummate the purchase of the Property hereunder that on the Closing all the following conditions (the "Closing Conditions") be satisfied:

a)  Seller shall have performed each covenant required to be performed by Seller.

b)  There shall be no material change in the physical condition of the Property.

c)  There shall be no change in the matters reflected in the Preliminary Report.

d)  There shall be no change in the matters reflected in the Survey.

e)  There shall not have been any breach of any of the representations and warranties made by Seller herein.

   f) Pursuant to Section 7.2, Title Underwriter shall stand ready to issue, at the Closing, the Title Policy, insuring Purchaser's fee simple title to the Property, dated the Closing Date, with liability in the amount required by Purchaser, subject only to the standard exclusions from coverage and the Permitted Encumbrances, and including such endorsements which the Title Company agrees to issue

   g) <u>Foreign Person</u>.  As a condition to the Closing of this transaction, Seller shall deliver to Purchaser an affidavit of Seller setting forth Seller's United States tax identification number and stating that Seller is not a foreign person, and is a United States Person as defined in the Internal Revenue Code.

8.5 <u>Post-Closing Conditions</u>.

Seller covenants to complete the following ("Post-Closing Conditions") at its sole cost and expense within six (6) months after the Close of Escrow:

   a) Extend Kingsland Blvd from Jordan Ranch Road to Woods Road.  Such extension shall include be two lanes and built to Waller County specifications.

   b) Realign Kingsland Boulevard to a position north of its present location, subject to the approval of Waller County, Seller and Purchaser.  This condition (b) shall not be binding upon Seller unless Buyer: (i) notifies Seller in writing on or before October 1, 2018 (ii) deposits an additional Five Hundred Thousand Dollars ($500,000.00) with Seller on or prior to December 10, 2018.  Said deposit shall be applicable to the Purchase Price and shall become non-refundable upon expiration of the Contingency Period, except in the event of default by Seller.

8.6 <u>Holdback</u>.

At the Closing, Escrow Holder will withold from the Purchase Price paid to Seller an amount equal to 125% of the projected costs to complete the Post-Closing Conditions ("Holdback Funds").  The Holdback Funds shall be deposited into a construction escrow account to be managed by Charter Title that will distribute the Holdback Funds to contractors or Seller upon instruction from Ward, Getz and Associates.

## 9.  PURCHASER'S WARRANTIES AND REPRESENTATIONS

Purchaser hereby represents that this Agreement constitutes a valid, binding and enforceable obligation of Purchaser.  Purchaser further represents that it shall construct a building on the Property substantially similar to that shown on Exhibit "D" hereof.

## 10.  SELLER'S WARRANTIES AND REPRESENTATIONS

Seller hereby makes the following representations, covenants and warranties:

10.1 <u>Litigation.</u>

To the best of Seller's actual knowledge, there is presently no claim, litigation, proceeding or governmental investigation pending or threatened against or relating to the Property or the transactions contemplated hereby.

10.2 <u>Compliance with Laws.</u>

To the best of Seller's actual knowledge, No notice of violation of any applicable zoning regulation or ordinance or other law, order, ordinance, permit, rule, regulation or requirement, or any covenants, conditions or restrictions affecting or relating to the Property has been given to Seller; the Property conforms to all applicable laws, order, ordinances, permits, rules, regulations and requirements.

10.3 <u>Foreign Person.</u>

Seller is not a foreign person and is a "United States Person" as such term is defined in Section 7701(a)(30) of the Internal Revenue Code of 1954, as amended.

10.4 <u>Condemnation</u>.

To the best knowledge and belief of Seller, there is presently no pending or contemplated condemnation of the Property or any part thereof.

10.5 <u>Access</u>.

To Seller's actual knowledge, There are no facts or conditions that will result in the termination of the present access from the Property to any utility services or to existing highways and roads.

10.6 <u>No Default.</u>

The Closing of the various transactions contemplated by this Agreement will not constitute or result in any default or event that with a notice or lapse of time, or both, would be a default, breach or violation of any lease, mortgage, deed of trust, covenant or other agreement, instrument or arrangement by which Seller or the Property are bound, or any event which would permit any party to accelerate the maturity of any indebtedness or other obligation. No consent or joinder by any partner of Seller is required for this Agreement or the performance of Seller's obligations hereunder.

10.7 <u>Subsequent Changes in Conditions.</u>

If Seller becomes aware of any fact or circumstances which would change a representation or warranty, then Seller will immediately give notice of such changed

fact or circumstance to Purchaser, but shall not relieve Seller of its liabilities or obligations with respect thereto.

10.8   <u>Contracts</u>.

At Closing there shall be no outstanding contracts made by Seller for any Improvements to the Property that have not been fully paid for by Seller.

10.9   <u>No Prior or Contemporaneous Agreements.</u>

There are no agreements with any other person relating to the sale or other conveyance of the Property, nor are there any oral agreements affecting the Property in any manner.

10.10   <u>No Tenancies or Occupancies.</u>

As of the date of this Agreement there are not nor will there be at the date of the Close of Escrow any tenancies or occupancies of whatever kind or nature on the Property or on any of the Improvements thereon.

10.11   <u>Seller Information.</u>

To the best of Seller's actual knowledge, All of the Property information provided to Purchaser pursuant to Section 8.2 above by is accurate and complete.

10.12   <u>Survival.</u>

All representations and warranties contained in this Article 10 shall be true and correct on the date hereof and on the Closing Date, to the best of Seller's actual knowledge.

10.13   <u>Purchaser Rights.</u>

Upon notification of any fact which would change any of the representations or warranties contained herein, Purchaser shall have the option to terminate this Agreement.

10.14   <u>Representations of Authority.</u>

Seller hereby represents to Purchaser that this Agreement has been duly executed by duly authorized officers or general partners of Seller and constitutes a valid, binding and enforceable obligation of Seller.

## 11. DEFAULT

11.1 <u>Deposit as Liquidated Damages</u>.

Once Deposits are released to Seller, they will be non-refundable, except in the event of Seller's default.

SHOULD THIS TRANSACTION FAIL TO CLOSE AS PROVIDED HEREIN BY REASON OF PURCHASER'S DEFAULT, PURCHASER'S LIABILITY SHALL BE LIQUIDATED IN THE TOTAL AMOUNT OF ALL FUNDS DEPOSITED WITH SELLER.

Seller's Initials: _M_    Purchaser's Initials: _BEM_

11.2 <u>Seller's Default.</u>

If Seller should fail or refuse to perform any of Seller's obligations hereunder, in addition to its other remedies available at law, in equity, or under this Agreement, Purchaser may exercise any one or more of the following remedies: (a) terminate this Agreement and obtain a refund of all funds deposited with Seller; or (b) enforce specific performance.

## 12. CONDEMNATION

12.1 <u>Condemnation.</u>

In the event that, prior to the Closing Date, a governmental entity shall commence any action of eminent domain to take a portion of the Property, Purchaser shall have the option either to: (a) elect not to acquire the Property, in which case this Agreement shall be terminated and all funds deposited with Seller shall be promptly returned to Purchaser, or (b) complete the acquisition of the Property, in which case Purchaser shall be entitled to all proceeds of such taking and Seller shall assign to Purchaser all right, title and interest of Seller thereto.

## 13. CASUALTY

13.1 <u>Material Damage.</u>

If prior to the Closing, all or any portion of the Property is materially damaged as a result of an earthquake or other natural disaster, Purchaser shall have the right, exercisable by giving written notice to Seller within fifteen (15) days after receiving written notice of such damage (but in any event prior to the Closing), either (a) to terminate this Agreement, in which case neither party shall have any further rights or obligations hereunder (except as may be expressly provided to the contrary elsewhere

in this Agreement), and all funds deposited with Seller and all documents deposited in Escrow shall be returned to the party depositing the same, or (b) to accept the Property in its then condition. The failure by Purchaser to notify Seller in writing within such fifteen (15) day period shall be deemed an election to terminate under clause (a) above.

13.2 Notice and Waiver.

Seller agrees to give Purchaser notice of any taking, damage or destruction of the Property promptly after Seller obtains knowledge thereof. Seller and Purchaser each expressly agree that the provisions of Articles 12 and 13 shall govern the parties' obligations in the event of any damage or destruction to the Property or the taking of all or any part of the Property, and waive the provisions of any Texas code or statutes to the contrary.

## 14. MISCELLANEOUS

14.1 Construction.

This Agreement is the result of negotiations between the parties and shall not be construed for or against either party regardless of which party drafted this Agreement or any portion thereof.

14.2 Legal Relationship.

Nothing contained in this Agreement shall create any partnership, joint venture, or other similar arrangement between Seller and Purchaser. No term or that is not a party hereto.

14.3 Waiver.

Except as herein expressly provided, no waiver by a party of any breach of this Agreement or of any warranty or representation hereunder by the other party shall be deemed to be a waiver of any other breach by the other party, and no acceptance of payment or performance by a party after any breach by the other party shall be deemed to be a waiver of any breach of this Agreement or of any representation or warranty hereunder by such other party. No failure or delay by a party to exercise any right it may have by reason of the default of the other party shall operate as a waiver of default or modification of this Agreement or shall prevent the exercise of any right by the first party while the other party continues to be so in default.

14.4 Attorneys' Fees.

In the event of any action between Purchaser and Seller seeking enforcement of any of the terms and conditions of this Agreement, or in connection with the Property, the

prevailing party in such action shall be awarded, in addition to damage, injunctive or other relief, its reasonable costs and expenses, including, but not limited to,  and reasonable attorneys' fees.

14.5 Notices.

All notices, demands, requests, elections, approvals, disapprovals, consents or other communications which this Agreement contemplates, shall be in writing and shall be sent by (a) personal delivery, (b) overnight courier or delivery service with proof of delivery, (c) United States mail, postage prepaid, registered or certified mail, or (d) facsimile (provided that such facsimile is time stamped indicating when sent and provided that a copy of the notice is concurrently sent by overnight courier or delivery service in accordance with clause (b) addressed to the respective parties as set forth in Section 1.2, or to such other address or to the attention of such other person as hereafter shall be designated in writing by the applicable party in a notice sent in accordance with these notice provisions.  Any such notice or communication shall be deemed to have been given at the time of personal delivery or, in the case of certified or registered mail, five (5) days after deposited in the custody of the United States Postal Service, or in the case of overnight courier or delivery service, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile, upon receipt.

14.6 Entire Agreement.

This Agreement and the items incorporated herein contain all of the agreements of the parties hereto with respect to the matters contained herein; and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose.  .

14.7 Successors.

The terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of the heirs, executors, administrators and assigns of the respective parties hereto.

14.8 Assignment.

Seller may assign its rights hereunder without the prior written consent of Purchaser. Purchaser may assign its rights hereunder without Seller's consent. Purchaser shall deliver written notice of the assignment, together with a copy of the fully executed assignment and assumption agreement, to Seller at least five (5) days before the Closing.

14.9   Choice of Laws.

This Agreement shall be governed by the laws of the State of Texas and any question arising hereunder shall be construed or determined according to such law.

14.10   Headings.

Headings at the beginning of each numbered Article and Section of this Agreement are solely for the convenience of the parties and are not a part of this Agreement.

14.11   Survival.

This Agreement shall survive the close of this transaction and shall remain a binding contract between the parties hereto.

14.12   Counterparts.

This Agreement may be signed by the parties in different counterparts and the signature pages combined to create a document binding on all parties.

14.13   Brokers.

At closing, Seller agrees to pay in cash to Boyd Commercial, LLC and Levcor, Inc. a real estate commission of 3.5% of Purchase Price for their services in this transaction. In the event that the transaction does not close for any reason, other than Seller's default, no commission shall be payable.

14.14   Business Days.

Business days shall mean Mondays through Fridays excluding the following holidays: New Year's Day, Martin Luther King, Jr. Day, President's Day, Memorial Day, July 4th, Labor Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas. If any of the foregoing holidays falls on a Saturday, then the Friday before shall constitute the holiday and if any of the foregoing holidays falls on a Sunday, then the Monday following shall constitute the holiday.

14.15  Confidentiality.

Neither Purchaser nor Seller shall disclose any specific terms or provisions of this Agreement to any person or entity not party to this Agreement (other than to the Brokers, necessary governmental agencies, and to Purchaser's and Seller's respective counsel, professionals, engineers and attorneys), nor shall Purchaser or Seller issue any press releases or make any public statements relating to this agreement unless mutually agreed otherwise.

14.16  Purchaser acknowledges receipt of the sample Utility District Notice attached hereto as Exhibit "C".

14.17  Exhibits.

The following Exhibits are attached hereto and made a part hereof by reference:
  Exhibit "A" – Developable Property
  Exhibit "B" - Form of Special Warranty Deed
  Exhibit "C" - Utility District Notice
  Exhibit "D" – Elevations
  Exhibit "E" – Detention Area

14.18  Purchaser's Execution.

Buyer must execute and deliver contract to Title Company by August, 22, 2018

14.19  Buyer is aware that Seller has signed a contract to sell land adjacent to the subject property. The final size and configuration of the +/- 207acre property will be subject to an updated survey. In the event there is a discrepancy between the property boundary to the east and the land Seller has contracted to sell, Buyer and Seller will mutually agree to the final configuration of the subject property during the Contingency Period.

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement as of the date first above written.

**PURCHASER:**
**P150, LLC,**
**a Delaware limited liability company**

By: _Brian E. McLaughlin_
Brian E. McLaughlin
Vice President of Real Estate

**SELLER:**
**ML DEV LP,**
**a Texas limited partnership**

By:  Window Dev LLC
Its:  General Partner

By: _M M_
Mike Magness, Manager

EXHIBIT "A"

DEVELOPABLE PROPERTY



1

## EXHIBIT "B"

### FORM OF SPECIAL WARRANTY DEED

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

_____

_____

_____

_____

**MAIL TAX STATEMENTS TO:**

_____

_____

_____

### SPECIAL WARRANTY DEED

THE STATE OF TEXAS §
                              §
COUNTY OF WALLER §

KNOW ALL MEN BY THESE PRESENTS:

THAT THE UNDERSIGNED, ML DEV LP, a Texas limited partnership ("Grantor"), with an address of 2310 Baker Road, Houston, Texas 77094, for and in consideration of the sum of TEN DOLLARS ($10.00) cash, and other good and valuable consideration paid to Grantor by _____, a _____ ("Grantee"), with an address of _____, ____, the receipt and sufficiency of which are hereby fully acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto Grantee, that certain tract of unimproved land totaling approximately _____ acres located in Waller County, Texas (the "Land"), being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes, together with any and all improvements situated on the Land and all right, title and interest of Seller, if any, in and to any and all appurtenances, strips or gores, roads, easements, streets, alleys, and all other rights and benefits attributable to the Land; and all rights of ingress and egress thereto (all of which are hereinafter collectively called the "Property").

This conveyance is expressly made and accepted subject only to all matters set forth on Exhibit "B" attached hereto and made a part hereof for all purposes (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto said Grantee; and Grantor does hereby bind

1

Grantor and Grantor's successors to WARRANT AND FOREVER DEFEND all and singular the Property unto said Grantee and Grantee's successors and assigns, against every person whomsoever claiming or to claim the same, or any part thereof by, through or under Grantor, but not otherwise, subject to the Permitted Exceptions.

IN WITNESS WHEREOF, this Special Warranty Deed is executed to be effective the ____ day of _____, 2019.

**GRANTOR:** **ML DEV LP**,
a Texas limited partnership

By:_____
Name:_____
Its:_____

STATE OF TEXAS           §
                         §
COUNTY OF _____   §

This instrument was acknowledged before me the ____ day of _____, 2019, by _____, as _____ of _____, a _____ on behalf of said _____.

_____
Notary Public, in and for
The State of Texas

Assessor's Parcel Number: _____

**Exhibit A to Special Warranty Deed**

**Legal Description of the Property**

[TO BE ATTACHED]

3

**Exhibit B to Special Warranty Deed**

**Permitted Exceptions**

[TO BE ATTACHED]

# EXHIBIT C

## Utility District Notice

 **Notice to a Purchaser of Real Property in a Water District**

Note: This Notice should be completed and given to a prospective purchaser prior to execution of a binding contract of sale and purchase, should be executed by the seller and purchaser and should be attached as a separate portion of a purchase contract. Please see NOTE at bottom of page.

1) The real property, described below, that you are about to purchase is located in the ___Waller County Road Improvement District No. 1___ District. The district has taxing authority separate from any other taxing authority and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the rate of taxes levied by the district on real property located in the district is $1.25_____ on each $100 of assessed valuation. If the district has not yet levied taxes, the most recent projected rate of tax, as of this date, is $1.25_____ on each $100 of assessed valuation. The total amount of bonds, excluding refunding bonds and any bonds or any portion of bonds issued that are payable solely from revenues received or expected to be received under a contract with a governmental entity, approved by the voters and which have been or may, at this date, be issued in $157,000,000.00_____ , and the aggregate initial principal amounts of all bonds issued for one or more of the specified facilities of the district and payable in whole or in part from property taxes is $4,600,000.00_____ .

2) The district has the authority to adopt and impose a standby fee on property in the district that has water, sanitary sewer, or drainage facilities and services available but not connected and which does not have a house, building, or other improvement located thereon and does not substantially utilize the utility capacity available to the property. The district may exercise the authority without holding an election on the matter. As of this date, the most recent amount of the standby fee is $_____ . An unpaid standby fee is a personal obligation of the person that owned the property at the time of imposition and is secured by a lien on the property. Any person may request a certificate from the district stating the amount, if any, of unpaid standby fees on a tract of property in the district.

3) Mark an "X" in one of the following three spaces and then complete as instructed.

__X__ Notice for Districts Located in Whole or in Part within the Corporate Boundaries of a Municipality (Complete Paragraph A).

_____ Notice for Districts Located in Whole or in Part in the Extraterritorial Jurisdiction of One or More Home-Rule Municipalities and Not Located within the Corporate Boundaries of a Municipality (Complete Paragraph B).

_____ Notice for Districts that are NOT Located in Whole or in Party within the Corporate Boundaries of a Municipality or the Extraterritorial Jurisdiction of One or More Home-Rule Municipalities.

A) The district is located in whole or in part within the corporate boundaries of the City of ___Brookshire, TX___ . The taxpayers of the district are subject to the taxes imposed by the municipality and by the district until the district is dissolved. By law, a district located within the corporate boundaries of a municipality may be dissolved by municipal ordinance without the consent of the district or the voters of the district.

B) The district is located in whole or in part in the extraterritorial jurisdiction of the City of ___Fulshear, TX___ . By law, a district located in the extraterritorial jurisdiction of a municipality may be annexed without the consent of the district or the voters of the district. When a district is annexed, the district is dissolved.

4) The purpose of this district is to provide water, sewer, drainage, or flood control facilities and services within the district through the issuance of bonds payable in whole or in part from property taxes. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned or to be owned by the district. The legal description of the property you are acquiring is as follows: +/- 107 acres wrapping the SWC of Jordan Ranch Blvd. at future Kingsland Blvd and further defined in Exhibit "A"

_____     _____          _____     _____
Signature of Seller                          Date                   Signature of Seller                          Date

PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME. THE DISTRICT ROUTINELY ESTABLISHES TAX RATES DURING THE MONTHS OF SEPTEMBER THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH THE TAX RATES ARE APPROVED BY THE DISTRICT. PURCHASER IS ADVISED TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF ANY CURRENT OR PROPOSED CHANGES TO THE INFORMATION SHOWN ON THIS FORM.

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or prior to execution of a binding contract for the purchase of the real property described in such notice or at closing of purchase of the real property.

_____     _____          _____     _____
Signature of Purchaser                       Date                   Signature of Purchaser                       Date

NOTE: Correct district name, tax rate, bond amounts. and legal description are to be placed in the appropriate space. Except for notices included as an addendum or paragraph of a purchase contract, the notice shall be executed by the seller and purchaser, as indicated. If the district does not propose to provide one or more of the specified facilities and services, the appropriate purpose may be eliminated. If the district has not yet levied taxes, a statement of the district's most recent projected rate of tax is to be placed in the appropriate space. If the district does not have approval from the commission to adopt and impose a standby fee, the second paragraph of the notice may be deleted. For the purposes of the notice form required to be given to the prospective purchaser prior to execution of a binding contract of sale and purchase, a seller and any agent, representative, or person acting on the seller's behalf may modify the notice by substitution of the words "January 1, _____" for the words "this date" and place the correct calendar year in the appropriate space.

11/1/2014 ©2014     ©2015 Houston REALTORS® Information Service, Inc.     HAR400
Transaction Real Estate, LLC, 22136 Wertheimer Pkwy #738 Katy TX 77450     Phone: 2813940878    Fax:     BGM Land
Brian Harbeck     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**EXHIBIT D**

**Elevations**



## EXHIBIT E

**Detention Area**