United States District Court
Southern District of Texas
**ENTERED**
July 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROSS DRESS FOR LESS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v.  § | CIVIL ACTION NO. H-20-978 |
| § | |
| ML DEVELOPMENT LP, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Ross Dress for Less moves for entry of final judgment, (Docket Entry No. 73); its attorneys' fees and costs, (Docket Entry No. 72); and relief from the court's April 2, 2021, award of attorney's fees and costs to ML Development LP, (Docket Entry No. 74). The motions for entry of final judgment and relief from the award of attorney's fees and costs are granted. The motion for Ross's attorneys' fees and costs is granted in part and denied in part. The reasons are set out below.

**I.    Background**

Ross sued ML Development on March 17, 2020, to recover money damages for breach of contract and unjust enrichment, alleging that ML Development failed to pay rollback and property taxes on property that was then owned by ML Development, as required under the parties' Agreement of Purchase and Sale of Real Property and Tax Proration Agreement. The parties cross-moved for summary judgment.

In Ross's response to ML Development's motion for summary judgment, Ross noted that ML Development could assert the affirmative defense of accord and satisfaction, but that ML Development had not pleaded accord and satisfaction. ML Development then moved to amend its

complaint to add the defense of accord and satisfaction, (Docket Entry No. 37), which this court granted, ordering the parties to file supplemental briefs on the issue of accord and satisfaction. (Docket Entry No. 41). The court then granted summary judgment in ML Development's favor, agreeing that ML Development's obligation to pay certain taxes on the property was discharged by the parties' subsequent Drainage Easement Agreement. (Docket Entry No. 46). Ross appealed.

The Fifth Circuit vacated this court's judgment granting summary judgment to ML Development LP, and reversed, granting summary judgment for Ross. *See Ross Dress for Less, Inc. v. ML Development, L.P.*, No. 21-20081, 2022 WL 501394 (5th Cir. Feb. 18, 2022). The Fifth Circuit held that the Drainage Easement did not affect or reduce ML Development's tax payment obligations under the Agreement of Purchase and Sale of Real Property and Tax Proration Agreement, because the first condition for accord and satisfaction—that a dispute existed between the parties prior to the new agreement—was not met. As a result, ML Development was required to pay all rollback taxes owed to Waller County on the property, and ML Development was required to pay its prorated share of 2019 real estate taxes on the property prior to the transaction closing on May 17, 2019. The Fifth Circuit's mandate issued on March 13, 2022, and the court awarded Ross its costs on appeal.

Ross now requests an order entering final judgment awarding $546,929.20 in damages, plus pre- and post-judgment interest on damages. ML Development does not contest the damages amount. The court orders that ML Development pay Ross $546,929.20 in damages, plus pre- and post-judgment interest.

Ross also moves under Federal Rule of Civil Procedure 60(b)(5) for relief from this court's award of attorneys' fees and costs to ML Development. Because the judgment that this court based its fee award in favor of ML Development was vacated on appeal, the vacated judgment can no

2

longer support the award. The court grants the motion, Docket Entry No. 74, and vacates its memorandum and opinion awarding $29,765.50 in attorneys' fees and costs to ML Development, Docket Entry No. 65.

As the prevailing party, Ross now moves for its attorneys' fees and expenses in accordance with the Agreement of Purchase and Sale of Real Property. (*See* Docket Entry No. 72-5, at 13–14 ("In the event of any action between Purchaser and Seller seeking enforcement of any of the terms of conditions of this Agreement . . . the prevailing party in such action shall be awarded, in addition to damage, . . . its reasonable costs and expenses, including, . . . reasonable attorneys' fees.")). Although Ross sought $546,929.20 in damages, Ross's counsel incurred $1,386,781.63 in attorneys' fees and $29,722.10 in expenses—over twice the amount sought in damages—in a case that ended at summary judgment, without trial, and with only minimal discovery. Ross seeks a fee award of 72% of hours billed, for a total of $872,471.86. This is compared to the $29,765.50 in attorney's fees and costs that the court originally awarded ML Development's counsel for a similar amount of briefing, albeit without the costs of appeal. Ross's counsel notes that "approximately 65% of attorneys' fees sought were incurred on appeal." (Docket Entry No. 72-1, at 9).

The court finds that an award of $872,471.86 in fees is unreasonable. The court awards Ross $348,988.75 in fees, and $29,722.10 in costs. The reasons are explained below.

## II.     Analysis

Federal Rule of Civil Procedure 54(d)(2) permits the court to enter a postjudgment award for attorneys' fees. The party seeking a fee award must show: (1) the judgment and the legal basis for the fee award; (2) the amount sought or a fair estimate of it; and (3) the terms of any fee agreement, if the court orders. Fed. R. Civ. P. 54(d)(2)(B). The party seeking fees has the burden

of showing entitlement to them. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). "In diversity cases[,] state law governs the award of attorney's fees." *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021) (quotation marks omitted). Texas law governed this diversity suit.

Texas courts use the lodestar method for calculating attorneys' fees. *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005). The first step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The second step is to determine the number of hours "reasonably expended." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. *Id.* Once the lodestar is determined, a court must determine whether to increase or decrease the amount based on several guiding factors, including:

> [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly, the fee customarily charged in the locality for similar legal services, the amount involved and the results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services, whether the fee is fixed or contingent on results obtained, the uncertainty of collection before the legal services have been rendered, and results obtained.

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019) (quotation marks omitted) (quoting *Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). These considerations "may not be used to enhance or reduce the base calculation to the extent they are already reflected in the reasonable hours and reasonable hourly rate." *Id.* "If a fee claimant seeks an enhancement, it must produce specific evidence showing that a higher amount is necessary to achieve a reasonable fee award." *Id.* "There is a strong presumption towards the

4

reasonableness of the lodestar rate without adjustment under [these] factors." *Calsep A/S v. Intelligent Petroleum Software Solutions, LLC*, No. 4:19-CV-1118, 2022 WL 508334, at *6 (S.D. Tex. Feb. 18, 2022). However, a court "may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees." *Crane v. Rave Rest. Grp., Inc.*, No. 4:20-CV-13, 2022 WL 403291, at *4 (E.D. Tex. Feb. 9, 2022) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)).

Ross's attorneys provided evidence and descriptions of the services performed; the amount of hours billed by each attorney; and the qualifications and expertise of the attorneys and paralegal who worked on this matter. (*See* Docket Entries No. 72-1, 72-2). ML Development does not meaningfully challenge the hours billed or the qualifications of the billing attorneys. Instead, ML Development focuses on the hourly rates of the attorneys and support staff. ML Development argues that the "time entries reveal[] . . . [that] partners charg[ed] three or four times the average billing rate among attorneys in Texas"; that "associates, who were already billing rates of $505.75 per hour, had their rates increased at least twice and in the case of [one associate], four times, without any explanation as to why the rates were increased and by such a large margin"; and that the "paralegal rates . . . rival[ed] those of associates in Harris County, Texas." (Docket Entry No. 76, at 8).

Ross's attorneys provide the following table of their rates:

*Table 4 – Timekeeper Rates*

| Timekeeper | Date | Adjusted Billed Rate (before additional 20% adjustment) | Adjusted Final Rate (with additional 20% adjustment) |
|---|---|---|---|
| P. Genender | 2/1/20-12/31/20 | $1,062.50 | $850.00 |
| | 1/1/21-11/30/21 | $1,147.50 | $918.00 |
| Z. Tripp | 11/1/20-12/31/20 | $998.75 | $799.00 |
| | 1/1/21-11/30/21 | $1083.75 | $867.00 |
| N. White | 2/1/20-12/31/20 | $935.00 | $748.00 |
| | 1/1/21-7/31/21 | $977.50 | $782.00 |
| A. Curtis | 1/1/21-9/30/21 | $884.00 | $707.20 |
| | 10/1/21-11/30/21 | $913.75 | $731.00 |
| M. Cloud | 9/1/20-9/30/20 | $505.75 | $404.60 |
| | 10/1/20-12/31/20 | $620.50 | $496.40 |
| | 1/1/21-9/30/21 | $654.50 | $523.60 |
| | 10/1/21-11/30/21 | $760.75 | $608.60 |
| S. Morris | 2/1/20-12/31/20 | $331.50 | $265.20 |
| | 1/1/21-10/31/21 | $344.25 | $275.40 |

Paul Genender and Zachary Tripp are partners at Weil, Gotshal & Manges, LLP; Nathan White is a counsel; and Aaron Curtis and Meghan Cloud are associates. Sharon Morris is a paralegal. (Docket Entry No. 72, at 19–20). Their standard rates have each been reduced by 20% "to account for any possible redundancies, inefficiencies, or other work that was ultimately unproductive." (*Id.*, at 18). Zachary Tripp and Aaron Curtis are based in Washington, D.C., and New York, respectively. Ross has not explained whether their rates have been adjusted to match the rate of Houston partners and associates.

"The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-cv-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (citing *Blum*, 465 U.S. at 896 & n.11). "The relevant legal community is the community where the district court sits." *Crane*, 2022 WL 403291, at *4 (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "Parties usually establish the reasonable hourly rate by providing affidavits of other attorneys practicing in the community." *Id.* "However, '[t]he affidavits of counsel may alone by sufficient proof' to establish the reasonable hourly rate." *Id.* (quoting *Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012)).

Ross originally submitted the affidavit of Paul R. Genender, the lead attorney on this case, to support that Ross's attorneys' fees were reasonable. The affidavit details the qualifications of each member of the litigation team, the tasks completed by the team, and the hours worked by each member. The affidavit did not state whether the fees charged by these attorneys were comparable to fees charged by other attorneys in Houston of comparable expertise and experience providing legal work of similar complexity and difficulty. The affidavit did not explain why each attorney's rates increased at least twice during the span of one year. Meghan Cloud's—a 2019

6

law school graduate—billable rate increased four times in the span of a year, from $505.75 to $760.75 (for adjusted rates of $404.60 to $608.60). The affidavit did not explain whether similar increases among junior associates were standard in the Houston legal market.

In response, ML Development provided some evidence suggesting that Ross's attorneys' fees were unreasonable. ML Development's attorney, Misty A. Hataway-Coné, submitted an affidavit stating that, "[i]n [her] opinion, based upon [her] twenty-one years of litigation experience coupled with statistics put out by the State Bar of Texas 2019 Hourly Fact Sheet," Ross's attorneys' fees are unreasonable. (Docket Entry No. 76-1). ML Development also provided the State Bar of Texas 2019 Hourly Fact Sheet. The fact sheet is based on the survey responses of 6,990 Texas attorneys. (Docket Entry No. 76-2, at 3). The fact sheet states that "[t]he median hourly rate for respondent full-time private practitioners in 2019 was $291," and that the "median" in Houston was $297. (*Id.*, at 4, 9). A separate fact sheet on paralegals states that "[i]n 2019, the median hourly rate reported was $123." (Docket Entry No. 76-3, at 8).

Based on this conflicting record, and Ross's unsatisfactory showing of the reasonableness of its attorneys' fees as compared to fees for similar attorneys in the Houston area, the court ordered Ross to submit additional briefing on the reasonableness of the hourly rates of its attorneys and paralegal. (Docket Entry No. 78). Ross filed a sealed response containing data from PricewaterhouseCoopers' (PwC) Management Report, which "combines billing rate data [in 2020 and 2021] from attorneys with similar experience at peer law firms in Houston, Texas." (Docket Entry No. 79-1, at 5). The report "include[s] the following law firms as part of the relevant peer group: Gibson Dunn & Crutcher LLP; Baker Botts L.L.P.; Vinson & Elkins LLP; Latham & Watkins LLP; Kirkland & Ellis LLP; Quinn, Emanuel, Urquhart & Sullivan, LLP; Hunton Andrews Kurth LLP; Akin, Gump, Strauss, Hauer & Feld LLP; Jones Day; and Shearman &

7

Sterling LLP." (*Id.*, at 5 n.1). Ross also filed a declaration of Collin J. Cox, a litigation partner in the Houston office of Gibson Dunn, and a former partner at Yetter Coleman. (Docket Entry No. 80-1).

The court orders that the PwC report be unsealed. Ross argues that the report should be sealed because it "contain[s] highly confidential, proprietary data, and information collected from PricewaterhouseCoopers' . . . proprietary Billing Rate & Associate Salary Survey ("BRASS"). The data collected as part of BRASS and detailed in the Sealed Documents is non-public data detailing the billing rate information of attorneys and staff from subscribing law firms across the nation." (Docket Entry No. 79, at 2). Courts presume, however, that the public should have access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir. 1981). "Public access to [judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (citation omitted) (alterations in original).

Ross has not presented a sufficient basis for sealing the PwC report. The report contains data showing the average and median rates of attorneys from eight law firms from 2020 and 2021. The information the report contains is already stale. The data does not show the rates of any specific attorney, or on any specific matter. The report does not reveal any of PwC's proprietary methods. It "consists of self-reported billing rates that can be obtained by anyone who . . . purchases the PricewaterhouseCoopers survey of rates," and the data it contains can be "easily obtained from public sources." *Baker v. United States*, 136 Fed. Cl. 162, 163 (2018) (denying motion to seal "billing rates that various firms . . . reported to . . . PricewaterhouseCoopers

8

voluntarily."). Ross has not identified any private harm to Weil Gotshal or any other firm that would overcome the presumption in favor of public access. The motion to seal, Docket Entry No. 79, is denied.

The data in the PwC report shows that the adjusted rates charged by Ross's attorneys were, for the most part, on par with the "median" and "average" rates for Houston litigation attorneys, working in big law firms, with similar years of experience. That is certainly helpful, if unsettling. That does not answer the second question: whether the charged rates are similar to "other attorneys in the general locality or area doing *similar work*." *Brazos Cnty. Water Control and Improvement District No. 1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App. 1985) (emphasis added). The hourly rates of urban big law firm lawyers, for a large number of lawyers charging a large number of hours may be appropriate for complicated and risky litigations, or large-exposure matters, but may not be appropriate for less demanding cases.

Even if Ross's rates were reasonable based on "the prevailing market rates in the relevant community," and the number of hours worked were "reasonably expended," the *Andersen* factors require this court to consider the novelty and difficulty of the questions involved, the skill required to perform the legal service properly, and the fee customarily charged in the locality for similar legal services. *Andersen*, 945 S.W.2d at 818. These factors require a downward adjustment from the amount Ross requests.

This was a narrow contract dispute, "involving a[] [single] plaintiff asserting claims arising from one chain of events." *Lota by Lota v. Home Depot U.S.A., Inc.*, No. 11-CV-05777-YGR, 2013 WL 6870006, at *16 (N.D. Cal. Dec. 31, 2013). Ross argues that this litigation involved "high stakes and risk," Docket Entry No. 79-1, but this is an overstatement. The issue was whether ML Development was required to pay rollback taxes and its prorated share of 2019 real estate

9

taxes under the terms of the parties' Agreement of Purchase and Sale of Real Property and Tax Proration Agreement. Section 6.6 of the Agreement of Purchase and Sale of Real Property provided that "[r]eal property taxes and the current installment of any special assessment approved by Purchaser in accordance with the provisions of Section 7.1 shall be prorated through Escrow to the Closing. All Roll Back Taxes shall be paid by Seller." (Docket Entry No. 72, at 7). The sole issue was how to interpret that provision.

Ross itself played a role in complicating the matter. In response to ML Development's motion for summary judgment, Ross "pointed out that ML 'failed to plead accord and satisfaction,'" even though ML Development had never raised the issue itself. ML Development then promptly moved to amend its complaint, stating: "On September 21, 2020, Ross Dress for Less, Inc. . . . raised the issue that accord and satisfaction could be an affirmative defense to Defendant. Defendant requests leave to add the defense of accord and satisfaction. Plaintiff cannot be surprised by this amendment since it briefed same in the cross-motion for summary judgment." (Docket Entry No. 37, at 2).

This court granted the motion and ordered supplemental briefing on accord and satisfaction. As the Fifth Circuit noted on appeal, Ross's supplemental brief did not mention the requirement for accord and satisfaction that there must be a "pre-existing dispute" between the parties, and this court did not address the requirement in its summary judgment decision. Ross did not address the issue until its motion for reconsideration. This court denied the motion for reconsideration, noting that the motion "assert[ed] arguments that could, and should, have been raised before judgment was entered, including that ML Development was not entitled to summary judgment due to a lack of evidence as to a bona fide dispute over the tax obligations, and the timing of the tax obligations and the execution of the Drainage Easement undercut the intended scope of

10

Paragraph 9. That is insufficient for the 'extraordinary remedy' of reconsideration." (Docket Entry No. 54, at 2).

This court is responsible for the extra attorney hours required by the court's own error in failing to notice and address the "pre-existing dispute" issue in the first instance. But the court cannot excuse its error by the complexity of the case. Even with the added issue of accord-and-satisfaction, this case did not involve novel, unsettled, or difficult questions.

Second, while Ross argues that most of its attorneys' fees were spent on appeal, the appeal itself was about a narrow and straightforward issue of state law: whether ML Development had met its burden on summary judgment of proving accord and satisfaction. This did not require expansive briefing on a novel, or particularly complicated, issue of law, and the appeal did not involve an extensive factual record.

Third, Ross's attorneys accepted representation of this case knowing at the outset that the total amount in dispute was at most slightly over $500,000. Ross's attorneys then spent over *twice* that amount litigating the case. This case did not involve discovery. This case did not involve a trial or preparations for trial. This case did not involve extensive pretrial motion practice. The only motion was for summary judgment, which Ross moved for a mere six months after filing this case. Despite these facts, Ross's attorneys spent $1,386,781.68 resolving this $500,000 dispute.

Finally, Ross's opposing counsel incurred only $29,765.50 defending this matter (before the appeal). (Docket Entry No. 55, at 6). Ross argues that 65% of its costs were spent on appeal. Assuming that ML Development similarly spent 65% of its costs on appeal, that would bring ML Development's total fees to approximately $85,000. The gap between the $85,000 that ML Development spent, and the $1,386,781.68, or even the $872,471.86 prorated amount that Ross's

11

attorneys seek, could not be wider.[1]  Ross has not argued that its attorneys were of higher "skill, experience, and reputation" than ML Development's counsel, and any such argument would be unpersuasive.  But even assuming a justifiable difference between the attorneys' hourly rates, these numbers are a good reference point for what is a reasonable amount of attorneys' fees, not just for "similar work," but for almost identical work.

Of course, the dollars at issue, standing alone, may not be the true measure of the stakes between the parties, and "there is no *per se* requirement of proportionality in an award of attorney fees." *Combs v. City of Huntington*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991)).  But the court finds Ross's explanations unpersuasive for why this $546,000 (at most) dispute was worth spending $872,471.86 in attorneys' fees.  Ross argues that "while [the] lawsuit seeks recovery of approximately $546,000 in taxes, the litigation between Ross and Defendant involves development of a $300+ million distribution facility and a parcel of land that Ross paid Defendant $33 million to acquire.  Ross's desire to protect its large and important investment drove its desire to successfully litigate this case." (Docket Entry No. 72, at 17).  Collin Cox's declaration similarly states, in support of Ross's charged rates, that "the outcome of this litigation posed ongoing risks to Ross's $300 million distribution facility in Waller County, Texas." (Docket Entry No. 80-1, at 4).  Ross's conclusory statements about "ongoing risks" do not explain why or how losing this lawsuit would impact Ross's "desire to protect its large and important investment," or why the overall property value

---

[1] As Ross noted in its opposition to ML Development's motion for attorneys' fees, ML Development submitted invoices totaling more than $60,000 in fees with its motion for attorneys' fees.  Even assuming that ML Development incurred $60,000 in legal fees before appeal, if ML Development similarly spent 65% of its costs on appeal, it would have incurred approximately $171,428.571 in fees, far less than the fees Ross requests.

had any impact on the value of this litigation. This was a dispute about the amount due under a contract; the risk was damages, not foreclosure or loss of interest in the land.

Ross also argues that "the implications of this case extend far beyond this matter . . . to other lawsuits pending in Texas." (Docket Entry No. 72, at 21). In a "related case pending in the 506th Judicial District Court of Waller County, Texas, [ML Development] refused to provide easements necessary to begin construction of Ross's distribution facility." (*Id.*, at 21–22). Ross argues that in ML Development's appeal in that state court case, ML Development referred to "this Court's summary judgment ruling, claiming among other things that Ross released Defendant from all existing and future obligations, including any obligation to provide the easements necessary for construction of the distribution facility." But, as Ross concedes, "the First Court of Appeals rejected ML [Development's] arguments," *id.*, at 22, without considering this court's ruling. Ross does not explain how this court's ruling on accord and satisfaction in this contract case would be preclusive in unrelated disputes between Ross and ML Development, so as to increase the importance and stakes of this case.

In sum, this case did not present novel or difficult issues. The amount of time and briefing required to resolve the case was, in some part, due to failures to squarely and timely present key issues to this court. There was hardly any discovery. There was no trial. There was an appeal, but that appeal involved a narrow and straightforward issue of law and a small factual record. This case did not require the kinds of litigation expertise or sophistication reflected in big law hourly rates charged by large teams of attorneys working many hours. And even the reduced fees are "excessive compared to the amount" that was "at stake or owed." *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, Nos. H-05-3167, H-06-2933, 2015 WL 6739022, at *5 (S.D. Tex. Nov. 4, 2015) (citing *Sibley v. RMA Partners, L.P.*, 138 S.W.3d 455, 459 (Tex. App.-Beaumont 2004, no pet.)).

The court finds that an award of fees that is less than the $546,000 at stake in this litigation, and more in line with ML Development's legal expenses, is reasonable. The court takes into account the work Ross's attorneys did to file the litigation and to appeal it, and for the success that the attorneys ultimately provided for their client. The court determines that a downward adjustment by approximately 60% of the $872,471.86 requested is warranted. The court awards fees in the amount of $348,988.75. ML Development does not challenge Ross's request for costs, and the court finds that request reasonable. The court grants Ross's request for $29,722.10 in costs.

### III. Conclusion

Ross's motion for entry of final judgment, Docket Entry No. 73, and motion to vacate this court's award of attorneys' fees and costs to ML Development, Docket Entry No. 74, are granted. The court orders that ML Development pay Ross $546,929.20 in damages, plus pre- and post-judgment interest. Ross's motion for attorneys' fees and costs, Docket Entry No. 72, is granted in part and denied in part. Ross is awarded $348,988.75 in attorneys' fees and $29,722.10 in costs.

SIGNED on July 12, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge